UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD SHATTLEROE,

    Plaintiff,

v.

AVFUEL CORPORATION,

    Defendant.
                                          /

Case No. 08-cv-15161

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (docket no. 10)**

In a one-count complaint, Plaintiff Edward Shattleroe alleges that his employer, Defendant Avfuel Corporation discriminated against him on the basis of his disability in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.* He claims that Avfuel failed to accommodate his disability by allowing him to report for work one half-hour late each morning, and then later fired him fired him for the reason that he is disabled. Discovery has closed and Avfuel has moved for summary judgment on Shattleroe's single claim, arguing he has failed to establish a prima facie case of discrimination, and that even if he could establish a case, he cannot produce any evidence of pretext. For the reasons stated below, the Court finds disputed material facts remain and will deny summary judgment.

**FACTS**

Avfuel, a Michigan corporation based in Ann Arbor, Michigan, calls itself the nation's leading independent supplier of aviation fuels and services.[1] It supplies aviation fuels and

---

[1] *See* company website: http://www.avfuel.com/companyInfo/companyInfo.asp

services to national and regional airlines, freight and cargo companies, corporations, airports and municipalities, crop dusters and helicopters, and the military.

Avfuel hired Shattleroe as a mechanic's assistant in June 2000. After a brief departure from Avfuel during some point in 2001 or 2002, Shattleroe returned to Avfuel on January 24, 2002 and remained there until October 15, 2007, when he was fired. Pl. dep. p. 27, 104. As a mechanic's assistant, his job duties included changing spark plugs, air filters, and, in some of the vehicles, the refuelers. *Id.* p. 27. At some point during his tenure, Shattleroe's job title changed from mechanic's assistant to fabricator / mechanic. *Id.* p. 47. Shattleroe's duties increased gradually to eventually include completely rebuilding or refurbishing trucks that would then be able to pump jet fuel into various aircraft. *Id.* p. 49-50. During the latter portion of Shattleroe's career at Avfuel, other employees would turn to him for help on how to perform certain tasks. *Id.* p. 48. He was never classified as a group leader by management, and did not receive any raises or bonuses that would have reflected such a promotion. *Id.*

Shattleroe was diagnosed with ulcerative colitis diagnosed in late 2001 or early 2002, but his symptoms stretch back to 1998. *Id.* p. 30. Ulcerative colitis is a type of inflammatory bowel disease that causes inflamation and ulcers in the inner lining of the colon and rectum. It cause diarrhea, abdominal pain, and rectal bleeding. The disease caused Shattleroe to suffer from fatigue and frequent diarrhea, which, during 2003, would occur up seven to twelve times per day. *Id.* p. 32. The disease made it difficult for Shattleroe to control his bowel movements, and as a result, he would, at times, defecate on himself if unable to reach a restroom immediately. *Id.* pp. 34-35. Stress would increase the incidents of uncontrollable diarrhea. *Id.* pp. 77-78.

Work at Avfuel officially began each day for Shattleroe's production group at 7:00 am and ended at 4:00 pm. *Id.* p. 45. Frequently, Shattleroe would arrive late because he would have to stop two or three times during his commute to use the bathroom. *Id.* p. 34. His tardiness was not a problem and he was never reprimanded for it. Eventually, Shattleroe spoke with supervisors Randy Harrison and Brian Dunt about an accommodation for his tardiness. Both agreed to officially allow Shattleroe to arrive at work at 7:30 am and leave at 4:30 pm. *Id.* pp. 34-35.

Shattleroe testified that beginning his day 30 minutes earlier would not have allowed him to arrive at 7:00 am. This is because it was not always the case that the shop opened at 7:00 am. If he arrived right at 7:00 am or earlier, and the shop was closed, he would have to travel down the road to try and find a restroom quickly enough to prevent an accident. Were he unable to find a restroom, he would defecate in his pants, have to travel back home to clean up, and then return to work once clean. *Id.* pp. 35, 67. Rather than take the chance of the shop being closed when he arrived, Shattleroe chose to arrive at 7:30 am, when he was sure the shop (and shop restroom) would be open. *Id.* p. 68.

Shattleroe considered alternatives to arriving to work late, but none were satisfactory. First, he considered obtaining a key to the shop so that if it was closed when he arrived, he could open it himself and use the restroom. Management, however, refused to provide him with a key, claiming Avfuel did not give keys to employees and that it already had a person to open the shop in the morning. *Id.* Shattleroe also considered wearing adult diapers, and on a couple of occasions wore them on his commute to work. On one occasion, while wearing the diapers, he defecated on himself, pulled over to a McDonald's, attempted to clean himself up with baby wipes. Unfortunately, that did not take care of the odor and he had to return home to shower before returning to work. *Id.* pp. 70-71.

Shattleroe also considered using the shower at work in the main building, but that was not a viable option. All personnel were advised that the shower at Avfuel was not for personal use. They were to be used only when one had to wash spilled jet fuel from the skin. *Id.* p. 71. Additionally, the shower was located in the main building, enclosed by a gate, the key to which Shattleroe did not possess. It was not open early in the morning when Shattleroe would arrive. *Id.* p. 42-43. Additionally, it was too embarrassing for Shattleroe to ask management if he could use the shower in order to clean himself after an accident. Even if he had permission and the building was open (or he had a key), it would have required him to enter the main building with soiled clothing, which was too embarrassing to do. *Id.* p. 71.

At some point in 2004, Avfuel hired Brian Green to replace Randy Harrison as Technical Operations Manager. Green dep. p. 3. Green convened a meeting with Shattleroe, and two other supervisors and the Human Resources Manager to discuss Shattleroe's work schedule. *Id.* p. 5; Def. Mot. Ex. C. At the meeting, Green informed Shattleroe that beginning October 1, 2005, Shattleroe would be required to arrive at 7:00 am and leave at 4:00 pm, concurrent with the operating hours of the shop. Green attempted to have Shattleroe sign a memorandum to that effect. Def. Mot. Ex. C. Shattleroe refused to sign it, but stated he would make every effort to arrive by 7:00 am. Pl. dep. p. 73. He admits that he was never reprimanded for arriving late to work after October 1, 2005, even though he would arrive five to ten minutes late at least three times per week. Pl. dep. p. 81.

Avfuel's attendance policy, located in its employee handbook, states the following:

> It is essential that the company have dependable employees. If an employee is absent or late, either someone else must be found to do the work or the work is not done at all. The Company must therefore treat

4

absenteeism and tardiness as serious disruptions of business, and will discipline employees accordingly.

It is the responsibility of all employees who are unable to report to work at their normal starting time to promptly notify their supervisor of the reason for and anticipated duration of their absence from work. If your supervisor cannot be reached, contact the Human Resources Department.

All time off must be requested in the Avfuel Attendance Program and approved by your supervisor. With the exception of emergencies, all time off should be requested **at least one month in advance** to ensure adequate departmental coverage.

Def. Mot. Ex. D (emphasis in original). Shattleroe acknowledged receipt of a copy of the policy. Def. Mot. Ex. E.

As a salaried five-year employee, Shattleroe was provided with fifteen days of vacation time each year. Def. Mot. Ex. F. He was also given three days of sick time each year, Def. Mot. Ex. H, for a total of eighteen days off each year. Avfuel claims that Shattleroe missed a total of 26 1/2 days of work from January 1, 2007 through October 11, 2007 and submits a report generated by the Avfuel Absence System in support in support.[2] Def. Mot. Ex. G. Avfuel claims that Shattleroe missed almost two weeks of work for which Avfuel did not pay him because it exceeded this vacation and sick day allowance. Avfuel further claims that Shattleroe missed work and failed to call in -- or called in late -- to tell

---

[2] The printout is not clear as to how many days Shattleroe actually missed from work. The portion of the printout attached to Avfuel motion, pages one through four of a six-page report, contains 40 entries indicating the date of the absence, the reason, the internal code for the absence, and, at times, comments. The defense has highlighted 19 entries, but does not expressly state what the highlighting indicates. It likely indicates those times when Shattleroe failed to call in to work, but the highlighting is not consistent. *Compare* entries for Jan. 3, 2007 and Jan. 31, 2007 *with* entries for Jan. 17, 2007 and Feb. 7, 2007. Additionally, the report indicates that Shattleroe has "-5" available vacation days and "-2" available sick days, implying that he exceeded his allowed absences by seven days. Because the report is unclear and because, as stated below, Shattleroe disputes both that that he missed as many days as the report indicates, and that he failed to call if he was going to be late or absent, the number of days Shattleroe actually missed, a material issue of fact, is in dispute.

his supervisor of his absence on sixteen instances, ten of which occurred within the last six month of his employment. Def. Br. p. 6. The printout generated by the absence system suggests there was an 8:00 am deadline for calls from employees who were running late or who were calling in sick, yet the employee handbook simply states that the employee is to "promptly notify" their supervisor, and if the employee cannot contact a supervisor, he should contact the Human Resources Department. Def. Mot. Ex. D.

Shattleroe disputes that he was absent from work on all the occasions asserted by Avfuel. He also disputes that he failed to call in to work to tell his supervisor that he would be absent or late. It was Shattleroe's understanding that if he was he was running late, he would call in after 8:00 am because that was the time when the receptionist was there and the phone lines were open. Pl. dep. p. 90. He did not have the personal cell phone number of his supervisor. *Id.* p. 91. Although there was a telephone in the production shop where he worked, he did not have the number for that phone; he had no need for that number because he was told to call the reception phone in the event he was absent or tardy. *Id.* p. 91. Further, management never told him there was an 8:00 am deadline or that if he failed to call by 8:00 am he would be charged with an unexcused absence. *Id.* p. 92. Shattleroe maintains that if he was going to miss work, he would call ahead. *Id.* pp. 95-96; Pl. Resp. Ex. 9 (Aff. of Pl. ¶ 3).

Mark Kohair, Shattleroe's then immediate supervisor, states that regular attendance is an essential function of the fabrication mechanic's position (Shattleroe's position) at Avfuel because one could only refurbish and rebuild jet fuel trucks while present at the shop. Kohair Aff. ¶ 2. He stated that Shattleroe was unable to perform his job duties while absent (he could not work from home). *Id.* ¶ 3. Kohair further states that Shattleroe's excessive absences placed a great strain on Shattleroe's production group. *Id.* ¶ 4. When

6

he was absent, Kohair would apparently have to reassign duties to employees already scheduled to work. *Id.* Additionally, because of plaintiff's experience, Kohair often assigned Shattleroe to lead a small group of employees rebuilding a new or rechassied truck while Kohair lead the other group. *Id.* ¶ 5. Shattleroe's excessive absences apparently caused delay in production because Kohair would have to lead both groups. *Id.* Consequently, Kohair states, Shattleroe's excessive absenteeism increased employees' workloads and deceased the refueler group's morale. *Id.* ¶ 6. Kohair testified in a deposition, however, that Shattleroe got along with and was well-liked by all of his co-workers and Kohair himself. Kohair dep. p. 6. No co-workers ever complained about him for *any* reason, which would logically include his alleged absenteeism or tardiness. *Id.* Shattleroe himself also disputes that his absenteeism or tardiness had any adverse effect on morale. In fact he got along well with co-workers, and was always available to help co-workers. Shattleroe Aff. ¶ 8. Consequently, the record is not conclusive as to whether Shattleroe's absenteeism or tardiness contributed to poor morale. This is a matter of fact that is yet to be resolved.

On October 15, 2007, Avfuel terminated Shattleroe's employment. Pl. dep. p. 104. Shattleroe testified he was told the reason for his termination was absenteeism and tardiness. *Id.* He was first told the reason was his constant tardiness and was later told it was absences. *Id.* p. 105. Avfuel contends in its motion that Shattleroe was terminated because his excessive, unexcused absences disrupted Avfuel's production schedule and affected the morale of the staff. Def. Mot. p. 8. An email drafted by Green stated that Shattleroe was being fired because his attendance had been irregular over the year. Def. Mot. Ex. K. Green also testified that he was fired primarily for his failure to call before not showing up to work. Green dep. p. 10. Likewise, Cheryl Kormos, Avfuel's Human

Resources Manager, testified in a deposition that Shattleroe was fired for "attendance issues" and failure to call ahead to notify his supervisor or human resources that he would not be coming to work. Kormos dep. p. 9. Shattleroe disputes that his tardiness and absences placed any strain on the refueler group. Shattleroe Aff. ¶ 8.

On January 31, 2008, Shattleroe filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") claiming he had been discharged "because of [his] disability, in violation of the Title I of the Americans with Disabilities Act of 1990, as amended." Def. Mot. Ex. L. Shattleroe was issued a right-to-sue letter from the EEOC and filed a one count complaint alleging that he was discharged by Avfuel for the impermissible reason that he had a disability unrelated to his ability to perform the duties of his job, and that Avfuel failed to make reasonable accommodations for Shattleroe's disability by modifying his work schedule.

## DISCUSSION

I. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007) (citation omitted).

The moving party has the burden of demonstrating that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992). A fact is "material" if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).

In opposing a motion for summary judgment, the nonmoving party must do more than raise some doubt as to the existence of a fact; it must produce evidence that would be sufficient to require submission of the issue to a jury. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

II. Analysis

Shattleroe claims he was discriminated against on the basis of his ulcerative colitis when Avfuel refused to allow him to change his work schedule to 7:30 am to 4:30 pm and later fired him for showing up late. Avfuel claims that Shattleroe cannot create a prima facie of an ADA violation, but even if he can, he cannot raise a factual issue that the termination was a pretext for unlawful discrimination.

The provision of the ADA applicable at the time Shattleroe was fired prohibits discrimination against a "qualified individual with a disability" because of the disability, with respect to any job application procedures, termination, or other terms, conditions and privileges of employment. 42 U.S.C. § 12112(a).[3] "Discriminat[ion]" includes a failure to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the employer. 42 U.S.C. § 12112(b)(5)(A).

A. <u>Shattleroe has not Offered Direct Evidence of Discrimination</u>

As with other forms of discrimination, plaintiff may prove disability discrimination in two ways. *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998). The first is by putting forward direct evidence that the defendant had a discriminatory motive in carrying out its employment decision. *Id.* "When an employer admits (or the evidence establishes) that its decision was based upon the employee's disability, direct evidence of discrimination exists." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1180 (6th Cir. 1996). Direct evidence is evidence that proves the existence of a fact without requiring any inferences. *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 523 (6th Cir. 2007). Such evidence would take the form, for example, of an employer telling its employee, "I fired you because you are disabled." *Smith*, 155 F.3d at 805.

Shattleroe claims to have direct evidence that Avfuel fired him because of his disability. Shattleroe claims that even though Green knew of Shattleroe's ulcerative colitis

---

[3] The ADA Amendments Act of 2008, which became effective on January 1, 2009, and amend section 12112 (a) does not apply retroactively to govern conduct occurring before the Act became effective. *See Milholland v. Sumner County Bd. of Educ.*, 569 F.3d 562, 565 (6th Cir. 2009).

and the need for an accommodation in the form of a modified schedule allowing him to work 7:30 am to 4:30 pm, Green still refused to accommodate him with a modified work schedule. Shattleroe considers this conduct to be direct evidence of discrimination. Pl. Resp. p. 21.

Shattleroe's evidence of discrimination is not direct. Green's failure to allow Shattleroe to arrive and stay later each day does not conclusively demonstrate, without an inference, that Avfuel discriminated against him on the basis of his disability. There are other, non-discriminatory reasons Avfuel has offered to justify refusing to modify Shattleroe's work schedule, e.g., safety concerns. At best, Avfuel's failure to modify his work schedule strengthens Shattleroe's prima facie case of discrimination based on circumstantial evidence. It is not, however, direct evidence of discrimination.

B. Shattleroe's Prima Facie Case of Discrimination

If a plaintiff has no direct evidence of discrimination, he or she may attempt to prove discrimination using the indirect burden-shifting approach articulated *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). *Smith*, 155 F.3d at 805. Under that approach, Plaintiff bears the burden of establishing a prima facie case of discrimination. *Id.* If the plaintiff successfully makes a prima facie case, an inference of discrimination arises and the burden of production shifts to the employer to proffer a legitimate non-discriminatory reason for firing the employee. *Id.* If the employer produces evidence from which a jury could believe the reason, the burden shifts back to the plaintiff to demonstrate that the employer's reason is a pretext for unlawful discrimination. *Id.* The ultimate burden of proving that the employer discriminated against the employee on account of the disability remains at all times on the plaintiff. *Id.*

To establish a prima facie case of disability discrimination, Shattleroe must prove:1) he is an individual with a disability; 2) he is otherwise qualified to perform the job requirements, with or without a reasonable accommodation; and 3) he suffered an adverse employment action because of his/her disability. *See Holiday v. City of Chattanooga*, 206 F.3d 637, 642 (6th Cir. 2000) (citing *Monette*, 90 F.3d at 1178).

Avfuel concedes for purposes of the motion that Shattleroe's disability rendered him "disabled" for purposes of the ADA and the first elements of his prima facie case. Def. Br. p. 11. It then claims Shattleroe could not meet the second requirement in that he cannot show he is qualified to perform the job requirements with or without an accommodation. An employee must be able to perform the "essential functions" of the job in order to be qualified to perform the job requirements. *See Brickers v. Cleveland Bd. of Educ.*, 145 F.3d 846, 850 (6th Cir. 1998). Although an employer does not have to exempt entirely the employee from an essential function of the job, if a reasonable accommodation can be made that would allow the employee to meet the essential function, it must be made. *Id.*[4]

Avfuel states that attendance is an essential element of the fabrication mechanic's job such that Shattleroe's continued absence rendered him unable to perform the essential elements of the position. Courts in this circuit have held that in almost any employment setting, regular and predictable attendance may be an essential function of a job. *See,*

---

[4] Avfuel cites *Brickers* for the proposition that courts have limited an employer's duty to modify job duties or schedules under the ADA to *non-essential* functions only. Def. Mot. p. 13 n. 12. The Court respectfully disagrees with this reading of *Brickers*. If an employee can perform the essential elements of a job even only by way of a reasonable accommodation, he is a "qualified individual" under the ADA. In fact, *Brickers* itself found this proposition to be true. *Brickers*, 145 F.3d at 850 ("If a claimant cannot show that she can perform the essential functions of a given position *with or without an accommodation*, she is not a "qualified individual with a disability.") (emphasis supplied).

*e.g., Brennemen v. MedCentral Health Sys.*, 366 F.3d 412, 418-19 (6th Cir. 2004); *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998).

In his response brief, Shattleroe does not dispute that regular attendance is an essential function of the fabrication mechanic's job. Rather, he disputes the accuracy of the computer entries indicating the number of days he was absent. Shattleroe Aff. ¶ 3. Shattleroe states in his affidavit that his supervisor told him there were days when he arrived after 7:00 am and Green would input into the computer that Shattleroe did not call or show up for work, when in fact he actually worked those days.[5] *Id.* Additionally, as stated above in footnote 2, the Avfuel Absence System printout is not clear on the number of unexcused days Shattleroe missed from work. Shattleroe's testimony, if believed, along with the ambiguity in the absence system printout, would allow the jury to reasonably conclude that Shattleroe did attend work regularly and satisfied the attendance requirement of his job.

The Court must conclude, under the requirements under Rule 56, that Shattleroe could meet the attendance requirement and is therefore a "qualified individual" under the ADA. Because Avfuel does not contest the third element of the prima facie case, the Court concludes that Shattleroe has made his prima facie case and is entitled to a rebuttable presumption of discrimination.

---

[5] Counsel for Avfuel argued at the hearing that such evidence is not admissible to prove that Green marked Shattleroe absent when he did in fact show up for work because it is hearsay. The statements, however, would appear to fall under the non-hearsay provisions of Fed. R. Evid. 801(d)(2) as either an admission or a adoptive admission by a party-opponent.

C. Avfuel's Proffer of a Legitimate, Non-Discriminatory
   Reason for Termination and Shattleroe's Showing of Pretext

Because Shattleroe makes a prima facie showing of disability discrimination, the burden of production shifts to Avfuel to articulate a legitimate, non-discriminatory reason for firing Shattleroe. *See Smith*, 155 F.3d at 805. Avfuel has offered related reasons why it decided to terminate Shattleroe. In its brief in support of its motion, it states unequivocally that it fired him because "his excessive unexcused absences disrupted Avfuel's production schedule and affected morale of the staff." Def. Br. p. 8 (quoting email drafted by Green, Def. Mot. Ex. K). In deposition, however, Green testified that the "primary reasons [sic] was the no call no show," Green dep. p. 10, indicating that the reason included more than simply Shattleroe's absences, and that the failure to call ahead was the real basis. Cheryl Kormos, Avfuel's Human Resources Manager, also testified that "attendance issues and failure to follow procedure" were the causes of Shattleroe's termination. Kormos dep. p. 9. The "procedure" Shattleroe allegedly failed to follow was calling in to "inform a supervisor if [he was] not going to be in." *Id.* All of these reasons are legitimate, non-discriminatory reasons for firing Shattleroe.

Avfuel having articulated a non-discriminatory reason for the firing, the burden shifts to Shattleroe to demonstrate that Avfuel's reason was merely a pretext for discrimination. *See Smith*, 155 F.3d at 805. A plaintiff may demonstrate pretext by showing the proffered reason: 1) has no basis in fact; 2) did not actually motivate the adverse employment action; or 3) was insufficient to warrant the challenged conduct. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). If a plaintiff can show that the defendant's proffered, nondiscriminatory reason is pretextual, a trier of fact may infer discrimination. *Id.*

Nevertheless, the ultimate burden of proof to show discrimination remains on the plaintiff at all times. *Id.*

The Court concludes that Shattleroe has met his burden of demonstrating that Avfuel's reason might have been pretextual and that a jury could find the real reason for his termination was a discriminatory one. First, he has raised a genuine issue of material fact as to whether the absence justification proffered by Avfuel has a proper basis. Shattleroe testified that his absences were not as numerous as the Avfuel Absence System's printout apparently reflects, which demonstrates the justification is a false one. Avfuel concedes that Shattleroe was allowed 18 absences in 2007, but took 26 1/2 instead. Many of those 26 1/2 absences in the printout indicate Shattleroe did not call and did not show up for work. But Shattleroe has testified regarding the inaccuracy of the printout and that he was absent far less times than the printout reflects. The unclarity of the evidence in the absence printout adds to Shattleroe's theory on this point. Shattleroe's testimony, if believed, brings into doubt the factual basis for the justification given by Avfuel and would allow a jury to infer he was fired for a different reason, e.g., a discriminatory one.

Shattleroe has also demonstrated potential pretext by showing that his alleged absences did not actually motivate Avfuel's decision to fire him. Shattleroe testified that he was initially told by management that his termination was due to tardiness, not absences. Pl. dep. p. 105. If he was in fact fired due to tardiness -- a fact that a jury could find based on Shattleroe's testimony and the equivocal testimony by Green and Kormos -- and Avfuel failed to reasonably accommodate him by allowing Shattleroe to arrive at 7:30 am when

the building would surely be open, a jury could find that Avfuel discriminated against him by refusing to make a reasonable accommodation for his medical condition.[6]

The testimony of Green and of Kormos also cast doubt on Avfuel's assertion claim that Shattleroe's absence motivated the decision to fire him. Green testified that the primary reason was the "no call no show" policy of the company. Green dep. p. 10. Kormos testified that "attendance issues and failure to follow procedure [to call to inform a supervisor if unable to arrive]" were the reason for his termination. Kormos dep. p. 9. These statements suggest that Shattleroe's failure to follow protocol was the reason Avfuel fired him. Even if the failure to call ahead was a legitimate reason for firing him, Shattleroe has provided evidence to impeach that justification by testifying that he always called ahead if he was going to be late or absent. Pl. dep. pp. 95-96. If someone input into the computer system a notation that he did not call, it was, according to Shattleroe, an incorrect entry. *Id.* Therefore, Shattleroe has produced sufficient evidence, which, if believed, could persuade a jury that Avfuel's decision to fire him for attendance related issues was not the real reason, but a pretext for discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) ("[A] plaintiff's *prima facie* case, combined with sufficient

---

[6] There is ample evidence from which a jury could conclude that allowing Shattleroe to arrive at 7:30 am would have been a reasonable accommodation. The fact that Avfuel allowed Shattleroe to arrive at 7:30 am for the first five years of his tenure there support the reasonableness of the accommodation. Additionally, Kormos testified that allowing him to arrive at 7:30 am and leave at 4:00 pm, to alleviate any "safety" concerns Green had with regard to Shattleroe working in the shop alone from 4:00 to 4:30 pm, and docking Shattleroe's pay for the 30 minutes less he worked per day would have been possible. Kormos dep. p. 18. Alternatively, Shattleroe could have arrived at 7:30 am and stayed until 4:30 pm, but refused to perform any labor from 4:00 to 4:30, instead filling out paperwork and preparing the next day's lists for parts, thereby alleviating any safety concerns Green had with regard to working in the shop alone. Pl. dep. p. 59; Shattleroe Aff. ¶ 5.

evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude the employer unlawfully discriminated.").

To conclude, the Court finds that Shattleroe has provided sufficient evidence from which a jury could reasonably conclude that Avfuel failed to make the reasonable accommodation by allowing him to arrive at work at 7:30 am rather than 7:00 am, and that when he failed to arrive regularly at 7:00 am, it fired him, in violation of the ADA.

## ORDER

For the reasons stated above, Avfuel has failed to meet its burden under Rule 56. Genuine issues of material fact remain with respect to the reason Shattleroe was fired, which may include a discriminatory reason. Accordingly, Avfuel's motion for summary judgment will be denied.

**WHEREFORE** it is hereby **ORDERED** that Defendant Avfuel's motion for summary judgment (docket no. 10) is **DENIED.**

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: March 15, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 15, 2010, by electronic and/or ordinary mail.

Alissa Greer
Case Manager